IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| State Farm Insurance Companies, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER RE CROSS-MOTIONS** |
| | ) | **FOR SUMMARY JUDGMENT AND** |
| vs. | ) | **DISMISSING ACTION** |
| | ) | |
| Turtle Mountain Fleet Farm LLC; | ) | |
| Rich's Construction, by its owner | ) | |
| Rich Parisien; Lloyd Greenwood and | ) | Case No. 1:12-cv-00094 |
| Brenda Greenwood, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court are cross-motions for summary judgment by plaintiff State Farm Insurance Companies ("State Farm'") (Doc. No. 26) and defendants Lloyd and Brenda Greenwood (Doc. 24). On April 25, 2014, the court heard oral argument on the motions. Except as otherwise indicated, the facts set forth below come from the opinion of the tribal appellate court (Doc. No. 25-1) and are either undisputed or have not been demonstrated to be clearly erroneous.[1]

## I. BACKGROUND

### A. The initial dispute

The Greenwoods are members of the Turtle Mountain Band of Chippewa Indians (the "Tribe"). On July 7, 2008, the Greenwoods' home was damaged by a tornado. The home was insured by State Farm. (Doc. No. 25-1).

The Greenwoods' home is located on the Turtle Mountain Indian Reservation. (Id.). Neither the tribal record nor the written record here are clear about the status of the land upon which the

---

[1] The parties have consented to the disposition of this case by a Magistrate Judge. (Doc. No. 18).

1

home is located. The Greenwoods' attorney stated during argument that it is situated on trust property. No evidence has been offered to the contrary - particularly evidence indicating it is on non-Indian owned fee land.

Following the occurrence of the loss, State Farm's adjustor inspected the premises. Based on estimates he prepared, State Farm issued a check to the Greenwoods for the repairs. (Id.).

Defendant Rich Parisien d/b/a Rich's Construction ("Rich's Construction") was engaged to perform the repair work. Materials were supplied by the Turtle Mountain Fleet Farm, LLC ("Fleet Farm") of which Parisien is also a principal. State Farm's involvement in the retention of Rich's Construction and later in the repair process is disputed. (Id.).

The Greenwoods became dissatisfied with the work performed by Rich's Construction and the materials supplied by Fleet farm and stopped paying. This led to the filing of an action in tribal court by Rich's Construction and Fleet Farm to collect on the remaining amounts they claimed were owed for labor and materials. (Id.).

### B. The filing of the tribal court action by Rich's Construction and Fleet Farm and the counterclaim and cross-claim by the Greenwoods

Rich's Construction and Fleet Farm instituted their collection action in the Turtle Mountain Tribal Court ("tribal court") by way of a complaint dated December 5, 2008. In addition to suing the Greenwoods, the tribal court plaintiffs named State Farm as a defendant, claiming that State Farm had dealt directly with them with respect to the repairs. They also contended that State Farm should have put their names on the check issued to the Greenwoods for the repair work. (Id.; Doc. No. 27-1).

The Greenwoods answered the tribal court complaint, denying liability and asserting a counterclaim against the tribal court plaintiffs for the damages they claimed they had incurred as

result of the alleged defective workmanship and materials. In addition, the Greenwoods cross-claimed against State Farm, alleging it too was liable because (1) State Farm had acted as a "liaison" between them and the tribal court plaintiffs for the repairs, and (2) State Farm had expressly or implicitly misrepresented that the tribal court plaintiffs were licensed and bonded when it turned out that they were not. (Doc. Nos. 25-1 & 27-2).

State Farm denied the claims of the tribal court plaintiffs and the Greenwoods. State Farm alleged that it had discharged its obligation under the policy by paying the Greenwoods for the estimated amount of the damage and that it had no contractual relationship with the tribal court plaintiffs because they had been hired by the Greenwoods. (Doc. Nos. 25-1 & 27-3, p. 2).

### C.     The dismissal of State Farm from the tribal action

On August 25, 2009, State Farm filed a motion to dismiss in the tribal action, contending the tribal court lacked jurisdiction over it as a non-Indian. In its brief in support of the motion, State Farm acknowledged the two exceptions set forth in Montana v. United States, 450 U.S. 544 (1981), to the general rule that an Indian tribe's sovereign powers (including the civil jurisdiction of its courts) do not extend to activities of nonmembers, but argued the exceptions did not apply given the decision by the United States Supreme Court in Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316 (2008) ("Plains Commerce Bank"). (Doc. Nos. 25-1 & 27-3). With respect to the first Montana exception (sometimes referred to as the consensual relationship exception), State Farm argued it was no longer enough, given Plains Commerce Bank, that the consensual relationship be with a tribal member. Rather, according to State Farm, the insurance contract in this instance would have to impact the tribe's right to self-government or its internal relations, which "would require, in essence, that State Farm have entered into a contract with the tribe itself, not

3

merely a tribal member." (Doc. No. 27-3, p. 6). With respect to the second Montana exception, State Farm argued that any economic impact resulting from its activities affected only the tribal members involved in the case and not the tribe.

On September 8, 2010, the tribal trial court dismissed State Farm from the action in a one page order after observing that (1) the tribal court plaintiffs had entered into a stipulation for dismissal of their claims against State Farm, and (2) State Farm had filed a motion to dismiss for lack of subject matter jurisdiction. Notably, the court did not discuss why it concluded there was a lack of jurisdiction over State Farm, much less make any factual findings or state any conclusions about tribal law that may have a bearing on the jurisdictional question. (Doc. No. 27-4).

### D. The trial in tribal court and the denial of the Greenwoods' petition to rejoin State Farm

The tribal action then proceeded to trial on the tribal court plaintiffs' claims against the Greenwoods and the Greenwoods' counterclaim. During the trial, one of the witnesses for Rich's Construction claimed he had advised State Farm that the Greenwood's house should not be repaired because it was a total loss. The Greenwoods claimed this testimony came as surprise and was a "bombshell." The Greenwoods petitioned the trial court to reinstate State Farm as a party so that they could also pursue a bad faith claim against State Farm based on its failure to disclose the purported recommendation from Rich's Construction and not adjusting and paying their claim based on their residence being a total loss. The trial court denied the request. (Doc. No. 25-1).[2]

---

[2] Counsel indicated during oral argument that the trial was suspended following the "surprise" testimony and has yet to be completed.

4

### E. The tribal appellate court's reversal of the dismissal of State Farm

The Greenwoods then appealed the trial court's dismissal of State Farm and its subsequent refusal to order State Farm's reinstatement. In a decision dated November 28, 2011, the tribal appellate court concluded that State Farm should not have been dismissed on jurisdictional grounds and that it should be required to defend against the Greenwoods' bad faith claim. The court stated:

> PER CURIAM
>
> The Greenwoods petitioned this Court for review of the lower court's denial of their request to re-join State Farm as a Defendant in this lawsuit brought by a contractor and supplier against them for services and supplies provided. They claim that although State Farm was dismissed from suit as a Defendant and cross-party Defendant they discovered new facts after commencement of the lawsuit that required the lower court to permit them to rejoin State Farm as a Defendant. This Court granted review on March 11, 2011 and oral argument was heard on the 17th day of June 2011 with the Greenwoods and State Farm appearing through counsel. No appearance was made by Turtle Mountain Fleet Farm.
>
> The facts in this case are relatively straightforward. The Greenwoods suffered damages to their home on July 7, 2008 when a tornado hit the Belcourt area. State Farm Insurance Company provided homeowner's insurance for the Greenwoods and after the tornado a State Farm assessor wrote up the claim and submitted it to either Turtle Mountain Fleet Farm and Rich's Construction for repair or to the Greenwoods. This appears to be a factual dispute that has not yet been resolved by the lower court. The Greenwoods were paid by State Farm, but allegedly failed to pay the Plaintiffs who commenced this lawsuit against them and State Farm. The Greenwoods then filed a cross-claim against State Farm, asserting that it had referred them to a contractor who performed inadequate work on the house, but the carrier was dismissed from the suit and only the suit by the contractor against the Greenwoods and their counterclaim against the contractor proceeded to trial.
>
> At trial one of the witnesses for the contractor testified that he advised State Farm's assessor that the home was a total loss and should be torn down. The Greenwoods allege that this came as a complete surprise to them because their insurance carrier never notified them of this. The State Farm agent allegedly told the contractor to "make due" with what it could as far as repairs.
>
> The Greenwoods then asked for leave of the Court to rejoin State Farm as a cross-Defendant based upon this revelation, which the Greenwoods describe as a "bombshell." The lower court denied the request on the grounds that the lower court lacked jurisdiction over State Farm resulting in this appeal.
>
> On appeal State Farm contends that this Court lacks jurisdiction over them because of the United States Supreme Court decision in <u>Plains Commerce Bank v. Long Family Cattle Company</u>. This Court respectfully disagrees with this assessment.

This Court's exercise of jurisdiction over a non-Indian Defendant is governed both by tribal and federal law. Before the lower Court may exercise jurisdiction it must have jurisdiction under the Turtle Mountain Tribal Code and under federal common law principles concocted by the United States Supreme Court, most recently in Plains Commerce Bank v. Long Family Cattle Company, 554 U.S. 316 (2008).

This Court finds that tribal law countenances the exercise of jurisdiction in this case because State Farm voluntarily entered into a contractual relationship with the Greenwoods, both of whom are tribal members, and the contract pertained to a home physically located on the Turtle Mountain Indian reservation.

However, jurisdiction must also lie under federal law because the United States Supreme Court has held that the tribal court exercise of jurisdiction over non-Indians is a federal question. See National Farmer's Union Insurance v. Crow Tribe, 471 US 845. There is a separate line of United States Supreme Court decisions that discuss the authority of tribal courts to adjudicate interests of non-Indians that also needs to be examined. In Montana v. United States, 450 U.S. 544 (1981) the United States Supreme Court severely proscribed the authority of Indian tribes to regulate the conduct of non-members on fee lands within reservation boundaries. Although that case had nothing to do with tribal court adjudicatory authority, it was cited by the Supreme Court as the controlling case on this issue of tribal court authority to hear disputes involving non-Indians in Strate v. A-1 Contractors, 520 U.S. 438, 445 (1997). There are two situations when tribal courts can adjudicate the interests of non-Indians: 1) when the non-Indian has entered into a consensual relationship with a tribal member and the subject matter of the lawsuit pertains to that consensual relationship and; 2) when the non-member's conduct "threatens or has some direct effect on the political integrity, the economic security, or health or welfare of the Tribe." Montana, at 566.

In Plains Commerce Bank v. Long Family Cattle Company, 554 U.S. 316 (2008), the United States Supreme Court carved out a narrow exception to the first prong of the Montana test so as to limit tribal court jurisdiction over any dispute that involves the ownership or potential title to fee lands. It is telling that the fee lands in Plains Commerce were located on the Cheyenne River Indian reservation in that case. Despite this the Court held that a tribal court cannot entertain any legal dispute pertaining to such lands that may affect the title to such lands. The tribal court in the Plains Commerce Bank case had upheld tribal court jurisdiction over an action brought by Indian plaintiffs against a non-Indian Bank asserting that the Bank had discriminated against them by foreclosing on fee lands within a reservation and selling them to non-Indians on more favorable terms than those offered them. Even though the tribal court noted that the transaction between the Bank and the Long Family Cattle Company was certainly a consensual one and it arose on the reservation, the Supreme Court nonetheless held that because the result of the litigation could potentially impact the title to such lands, tribal court jurisdiction was foreclosed under Montana.

Even though this Court finds no such exception in the Montana decision itself, the reality tribal courts deal with is that their jurisdiction is oftentimes circumscribed by United States Supreme Court decisions that have no mooring in legal analysis, but instead appear to be the political will of a majority of Justices on the Supreme Court. In this case, however, it is clear to this Court that an insurance company who voluntarily insures an Indian insured on an Indian reservation, even if the insurance pertains to fee land, is subject to the

6

> jurisdiction of the Tribal Court if a dispute breaks out regarding the nature of the insurance coverage itself. In the case at bar the Greenwoods had a contractual relationship with State Farm that State Farm claims was extinguished when the Greenwoods accepted payment from it for the assessed damages to their home. The Greenwoods claim that they accepted that settlement under false pretences [sic] because its insurance company, which had a duty of good faith in dealing with them, failed to disclose that the contractor had notified its agent that the house was a complete loss.
>
> If this Court were to hold that it lacks jurisdiction over State Farm herein it would in essence be holding that an insurance carrier promising to indemnify an on-reservation loss by a member of the Turtle Mountain Tribe is beyond the scope of tribal jurisdiction. Montana clearly holds that private consensual relationships, such as insurance, are disputes over which the lower court may exercise jurisdiction.
>
> This case also does not fit into the Plains Commerce exception to Montana because in no way would the lower court's adjudication of the claim involving State Farm deprive a party of fee land.
>
> Of course this case comes to us in a rather odd procedural posture because of the fact that State Farm paid the Greenwoods for the claim and the Greenwoods allegedly failed to pay the contractor and supplier. The legal issue presented, and one that should be addressed by the Court, was whether State Farm failed to act in good faith when it paid the Greenwoods the claim. If it failed to act in good faith certainly the insurance policy is a sufficient commercial relationship to warrant the lower court's exercise of jurisdiction.
>
> Wherefore, after due consideration it is hereby
>
> ORDERED, ADJUDGED, AND DECREED that the lower court's order dismissing State Farm Insurance for lack of jurisdiction is REVERSED and this case remanded to the lower court to make a determination whether State Farm acted in bad faith in this case and whether the previous dismissal of State Farm as a co-Defendant should be reconsidered.
>
> So ordered this 28th day of November 2011.
>
> CHIEF JUSTICE JONES for the Court:

(Doc. No. 25-1).

In concluding that the trial court had erred in dismissing State Farm on jurisdictional grounds, the tribal appellate court addressed and rejected State Farm's argument that the Supreme Court in <u>Plains Commerce Bank</u> had narrowed the first <u>Montana</u> exception to require that the consensual relationship must be with the Tribe. The court did not address the principal argument that State Farm now makes for lack of tribal court jurisdiction, which is that the conduct necessary

7

to support a claim against it occurred off the reservation, including the making of the insurance contract, the adjustment of the loss, and the alleged non-disclosure of the advice from Rich's Construction that the home be declared a total loss. The reason why is that State Farm never presented these arguments to the tribal trial or appellate court - a point that State Farm's counsel acknowledged during argument here.

### F. This action

#### 1. The pleadings

After the tribal appellate court's remand, State Farm initiated this action seeking a declaration that the tribal court lacks jurisdiction over it.[3] (Doc. Nos. 1 & 8). In response, the Greenwoods filed a special answer contending the tribal court has exclusive jurisdiction over the underlying disputes among the parties based upon State Farm having entered into a consensual relationship with them as tribal members to insure their house located on the reservation. Also, after denying a number of State Farm's allegations, the Greenwoods alleged that: (1) State Farm recommended to them that they use the tribal court plaintiffs to repair their home; (2) the tribal court plaintiffs served as agents of State Farm; and (3) State Farm concealed the information that Rich's Construction had recommended their home should be demolished and not repaired and, in so doing, acted in bad faith. (Doc. No. 11).

The tribal court plaintiffs (who are co-defendants with the Greenwoods in this action) also filed a special answer in which they contend this action should be dismissed based on the "concepts

---

[3] State Farm and the Greenwoods have both addressed in their cross-motions for summary judgment the question of tribal court jurisdiction of the Greenwoods' claims against State Farm. They also presented oral argument on the issue. In so doing, the parties apparently read State Farm's amended complaint as including a challenge of the tribal court's jurisdiction over the Greenwoods' claims although, when read literally, State Farm's pleading is less than clear on that point.

8

of deferral, exhaustion, and comity" given the pending tribal action. (Doc. No. 14). The tribal court plaintiffs, however, did not respond to the pending motions for summary judgment and their attorney acknowledged during oral argument that his clients no longer have a claim against State Farm given their earlier agreement to dismiss it from the tribal action. Hence, it appears clear that any jurisdictional issue that State Farm may have attempted to raise in its amended complaint with respect to the tribal court plaintiffs is moot and the discussion that follows will focus only upon whether the tribal court has jurisdiction over the Greenwoods' claims against State Farm.

## II. DISCUSSION

### A. Governing law

#### 1. Tribal jurisdiction

As discussed earlier, tribal court jurisdiction generally does not extend to activities of nonmembers of the tribe. E.g., Montana, 450 U.S. at 565. There are, however, the two well-established Montana exceptions that provide for tribal jurisdiction over nonmembers for activity on reservations, even on non-Indian fee lands, if: (1) the nonmembers have entered into a consensual relationship with the tribe or its members; or (2) the activity at issue directly affects the tribe's political integrity, economic security, health, or welfare. Id. at 565; Attorney's Process and Investigation Services, Inc. v. Sac & Fox Tribe of the Mississippi in Iowa, 609 F.3d 927, 936 (8th Cir. 2010) ("Attorney's Process").

In this case, the remainder of the discussion will focus upon the first Montana exception since that is what the tribal appellate court relied upon for its conclusion that the trial court had erred in dismissing State Farm.

9

## 2. Tribal exhaustion rule

The tribal exhaustion rule provides that, absent exceptional circumstances, federal courts should abstain from hearing challenges to tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted. Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9 (1987) ("LaPlante"); National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985) ("National Farmers Union") (This "policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.").

In this case, the tribal appellate court concluded on interlocutory appeal not only that the trial court erred in dismissing State Farm on jurisdictional grounds when it did, but also that the tribal court does have jurisdiction over at least the Greenwoods' bad faith claim by virtue of the first Montana exception. Because this court concludes the tribal appellate court reached the right result for reasons that follow, it need not be concerned with the question of what to do if it was uncertain about the jurisdictional question given the sparsity of the facts, which is due in part to two things. The first is State Farm having made an overarching argument for lack of jurisdiction in its motion to dismiss in tribal court and not also the more particular fact-and-tribal-law-bound argument it primarily relies upon here. The second is the tribal appellate court deciding the jurisdictional question on interlocutory appeal rather than concluding there was a colorable claim for jurisdiction and remanding for a more complete exhaustion of the issue by the trial court.

## 3. Evaluation of the jurisdictional question

The extent of tribal court jurisdiction over claims against nonmembers is a question of federal law for which this court makes its own independent determination. See Attorney's Process,

609 F.3d at 934; Nord v. Kelly, 520 F.3d 848, 852 (8th Cir. 2008). However, as a matter of comity, the court should consider the opinions of the tribal court on the jurisdictional issue and give due consideration to its expertise in the matter. See National Farmers Union, 471 U.S. at 857; Water Wheel Camp Recreational Area, Inc. v. LaRance, 642 F.3d 802, 808 (9th Cir. 2011).

In deciding the jurisdictional issue, the court is instructed to rely upon the tribal court record for the facts (unless there has been a clear error) and to defer to the decisions of the tribal court with respect to matters of tribal law. See, e.g., Attorney's Process, 609 F.3d at 934, 937 & 943; Prescott v. Little Six, Inc., 387 F.3d 753, 756-57 (8th Cir. 2004).

**B.** **State Farm's argument that there is no tribal court jurisdiction because of the lack of any demonstrable impact on tribal self-government or internal tribal relations**

As noted earlier, State Farm argued to the tribal trial court that whatever relationship it had with the Greenwoods did not affect tribal self-government or internal tribal relations. Therefore, according to State Farm, not even the first Montana exception applies, given what it contended was a narrowing of the first exception by Plains Commerce Bank. In fact, State Farm went so far as to argue that the "consensual relationship" for purposes of the first Montana exception must now be with the Tribe after Plains Commerce Bank and not simply with a tribal member.

It is unclear from State Farm's briefing here whether it is again making the same argument. But, if so, the argument lacks merit - at least in the Eighth Circuit where the decisions since Plains Commerce Bank have not limited the first Montana exception in the manner suggested by State Farm. See, e.g., Dish Network Service L.L.C. v. Laducer, 725 F.3d 877 (8th Cir. 2013) ("Dish Network") (contract by non-Indian Dish Network with tribal member created issue of tribal court jurisdiction requiring tribal exhaustion); Attorney's Process, 609 F.3d at 941 ("the consensual

11

relationship contemplated by the first Montana exception may be with the Tribe itself 'or its members[,]'" quoting Montana, 450 U.S. at 565).

Also, the Fifth Circuit has recently rejected State Farm's argument, stating:

> Dolgencorp argues that Plains Commerce narrowed the Montana consensual relationship exception, allowing tribes to regulate consensual relationships with nonmembers only upon a showing that the specific relationships "implicate tribal governance and internal relations." In Plains Commerce, 554 U.S. at 334–35, 128 S.Ct. 2709, the Supreme Court described the Montana consensual relationship exception as follows:
>
>> The logic of Montana is that certain activities on non-Indian fee land (say, a business enterprise employing tribal members) or certain uses (say, commercial development) may intrude on the internal relations of the tribe or threaten self-rule. To the extent they do, such activities or land uses may be regulated. Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight. While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations.
>
> (citation and parenthetical omitted). The Court further stated:
>
>> [Indian] laws and regulations may be fairly imposed on nonmembers only if the nonmember has consented, either expressly or by his actions. Even then, the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations. See Montana, 450 U.S., at 564, 101 S.Ct. 1245.
>
> Id. at 337, 128 S.Ct. 2709.
>
> We do not interpret Plains Commerce to require an additional showing that one specific relationship, in itself, "intrude[s] on the internal relations of the tribe or threaten[s] self-rule." It is hard to imagine how a single employment relationship between a tribe member and a business could ever have such an impact. On the other hand, at a higher level of generality, the ability to regulate the working conditions (particularly as pertains to health and safety) of tribe members employed on reservation land is plainly central to the tribe's power of self-government. Nothing in Plains Commerce requires a focus on the highly specific rather than the general.
>
> Our conclusion is strengthened by the fact that since Plains Commerce was decided, no court has, despite finding a consensual relationship with a nexus to a

12

tribal regulation, rejected tribal jurisdiction because the relationship did not "implicate tribal governance and internal relations."[5] We also note that any discussion in Plains Commerce of tribal authority to regulate nonmember conduct under Montana is dicta; its result is based on a holding that Montana does not allow a tribe to regulate the sale of land owned by a non-member. See, e.g., Plains Commerce, 554 U.S. at 340, 128 S.Ct. 2709 ("Montana provides that, in certain circumstances, tribes may exercise authority over the conduct of nonmembers, even if that conduct takes place on non-Indian fee land. But conduct taking place on the land and the sale of the land are two very different things.").[6]

Dolgencorp, Inc. v. Mississippi Band of Choctaw Indians, 746 F.3d 167, 175 (5th Cir. 2014) ("Dolgencorp") (footnotes omitted).

### C. State Farm's argument that the tribal court lacks jurisdiction because the allegedly critical acts took place off the reservation

State Farm's primary argument now is that any acts that might give rise to a claim against it occurred off the reservation. According to State Farm, this includes the entering into the insurance contract, the decisions regarding coverage, the issuing of the check paying the loss, and the purported failure to disclose advice given by Rich's Construction to State Farm that the Greenwoods' residence not be repaired. The only activity that State Farm concedes occurred on the reservation is that its adjustor inspected the Greenwoods' residence prior to coming up with his estimate of the loss.

More particularly, State Farm argues that any claim for bad faith in this context is necessarily a tort claim, citing authority from several different states supporting this position. State Farm then goes on to argue that the tribal court lacks jurisdiction over any tort bad faith claim because the Greenwoods have not proved in this proceeding that State Farm's alleged failure to disclose what Rich's Construction purportedly recommended took place on the reservation. In the alternative, State Farm argues that, even if there was a claim for breach of contract, the alleged breach would

13

have occurred with the failure to make the proper payment. And, according to State Farm, this would have occurred where the payment would have originated from, which was off the reservation.

There are a number of problems with State Farm's arguments. Beginning first with whether the Greenwoods' bad faith claim is necessarily a tort claim, the authority that State Farm relies upon is by no means universally accepted. See generally 3 Law and Practice of Insurance Coverage Litigation §§ 28:16 - 28:24 (database updated June 2013) ("Insurance Coverage Litigation"); 14 Couch on Insurance § 204:16 (database updated December 2013). While some jurisdictions hold that any claim for bad faith in this context is a tort claim, there are other jurisdictions that take the opposite view, which is that a claim for bad faith in the "first party" insurance context can only arise as a matter of contract. Id.; see also Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 891-92 (8th Cir. 2009) (noting the differences between Iowa law and Illinois law); Callies v. United Heritage Property and Cas. Ins. Co., No. 1 Ca-Cv 13-0189, 2014 WL 1048846, at *3 (Ariz. Ct. App. Mar. 18, 2014) (unpublished opinion) ("Callies") (noting the differences between Arizona and Oregon law). Also, there are jurisdictions which hold that a "first party" claim for bad faith can be either a claim for breach of contract or tort. Insurance Coverage Litigation §§ 28.16 & 28.24. Finally, there are jurisdictions that have adopted other variations, including allowing tort-like remedies for a bad faith claim grounded in contract. Id. at §§ 28:16 - 28:24.

This court is not aware of what the tribal law may be with respect to this point. But, given the foregoing, the tribal court could very well conclude that: (1) any contract for insurance contains an implied obligation to act in good faith and that a breach of this obligation gives rise to a claim in contract; and/or (2) that the obligation on the part of an insurer to act in good faith may be the basis for a tort claim or at least allow for the recovery of tort-like damages.

A second problem with State Farm's argument is its contention that the alleged tortious activity occurred off the reservation. In making this argument, State Farm focuses only upon the element of where the lack of disclosure took place and ignores the other elements, such as where the Greenwoods' reliance on being fairly dealt with (including receipt of any necessary communications) took place and, perhaps, more importantly, where the harm occurred. In this case, the tribal court might reasonably conclude that the tortious activity took place within the reservation boundaries after considering all of the tort's elements. Cf., Dish Network, 725 F.3d at 884 (noting the tort of abuse of process occurs under North Dakota law where the extortionate effect was felt rather than where the process was filed); West American Ins. Co. v. RLI Ins. Co., 698 F.3d 1069, 1073-74 (8th Cir. 2012) (concluding that the district court correctly applied Kansas law with respect to an insurance bad faith claim because that was where the economic impact of the alleged bad faith was felt); Hablas v. Armour & Co., 270 F.2d 71, 75-76 (8th Cir. 1959) (concluding that North Dakota would likely apply the "place of injury" rule to determining what law governs in fraud cases since that is the rule it generally follows in tort cases); Callies, 2014 WL 1048846, at *4 (looking to where the harm took place to determine whether Arizona or Oregon law should apply to a bad faith insurance claim because that is the last element required to be proved to establish liability); Restatement (Second) of Conflict of Laws §§ 145, 148 (1971).[4] Also, if the location of where the payment was to be made was somehow relevant, State Farm has failed to demonstrate why the tribal

---

[4] Even if the critical element was where the alleged failure to disclose the information that is the subject of the bad faith claim took place, State Farm has failed to demonstrate why the tribal court could not come to the conclusion that State Farm had the obligation to communicate pertinent information to the Greenwoods where they were located and that any failure to do so occurred on the reservation. Cf. West American Ins. Co. v. RLI Ins. Co., 698 F.3d at 1073 (suggesting in an insurance bad faith case that the failure to communicate a settlement offer took place where the insured resided).

15

court could not conclude that the relevant location for tender of payment for the full loss would be where the Greenwoods were located. See 74 Am. Jur. 2d Tender § 18 (database updated Feb. 2014).

The third and more fundamental problem with State Farm's argument is that the focus for purposes of the first Montana exception (at least in the Eighth Circuit) is not limited to where the conduct necessary to establish a particular element of a claim for breach of contract or tort took place, but rather, more broadly, is whether there is a sufficient nexus between the claims being asserted and the consensual relationship. See Dish Network, 725 F.3d at 885; Attorney's Process, 609 F.3d at 941; cf. Atkinson Trading Co., Inc. v. Shirley, 532 U.S. 645, 656 (2001) ("Montana's consensual relationship exception requires that the tax or regulation imposed by the Indian tribe have a nexus to the consensual relationship itself.").[5]

---

[5] In Attorney's Process, one of the tort claims at issue was for conversion of tribal funds. The Eighth Circuit concluded the tribal court did not have jurisdiction over the claim under the second Montana exception because of the lack of evidence that the conversion took place on the reservation. With respect to the first Montana exception, however, the court concluded that all that needed be established was a sufficient nexus between the tortious activity and the consensual relationship that was the basis for the first exception and remanded the case to the district court to determine whether the requisite nexus had been established. Attorney's Process, 609 F.3d at 941

In Dish Network, the tort claim at issue was for abuse of process. Defendant Dish Network claimed that any abuse of process occurred off the reservation when it filed the action that was the subject of the claim in federal court. The Eighth Circuit cited authority that cast doubt on that argument and went on to say:
> Even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arises out of and is intimately related to DISH's contract with Brian and that contract relates to activities on tribal land.

Dish Network, 725 F.3d at 884. Then, after distinguishing Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087 (8th Cir.1998) - a case which State Farm relies upon here, the court stated:
> In Attorney's Process, we considered whether there was tribal court jurisdiction over a conversion claim arising out of monies paid under a contract between an Indian party and a non Indian. Id. at 940. There, the district court had found tribal court jurisdiction under the second Montana exception. Id. at 937. We reversed, after observing that in that case neither the receipt nor the retention of the challenged funds was alleged to have occurred inside Indian territory. Id. at 940-41. We suggested that the "operative question for jurisdictional purposes" under the first Montana question would be whether the company's conversion claim had "a sufficient nexus to the consensual relationship" formed through an existing contract between the tribe and a non Indian contractor. Id. at 941.

Dish Network, 725 F.3d at 885.

16

In this case, State Farm entered into an agreement to provide property damage and loss coverage for a residence owned by tribal members located on the Turtle Mountain Reservation. The court concludes this was a sufficient consensual relationship with respect to an activity or matter occurring on the reservation to invoke the first Montana exception. See, e.g., Montana, 450 U.S. at 565; cf. Dish Network, 725 F.3d at 884 (contract between tribal member and non-Indian Dish Network); Allstate Indemnity Co. v. Stump, 191 F.3d 1071 (9th Cir. 1999) (colorable claim of tribal jurisdiction based on an insurance policy issued to a tribal member living on the reservation); Progressive Northwestern Ins. Co. v. Nielsen, No. A3-01-91, 2002 WL 417402, at *3 (D.N.D. Jan. 8, 2002) (colorable claim of jurisdiction based on an insurance policy issued to a tribal member living near the reservation for an accident occurring on the reservation).

The court further concludes there is a sufficient nexus between the Greenwoods' claims (whether characterized as a breach of contract, a tort, or both) and the consensual relationship arising out of the property insurance contract to provide for tribal court jurisdiction. To the extent the claims are for breach of contract, they obviously go to the heart of the consensual relationship. But, even if the Greenwoods' bad faith claim arises out of an independent obligation to act in good faith and sound in tort, it still has a direct relationship to State Farm's obligation under the policy to make payment for any damages or loss for property located on the reservation. Cf. LaPlante, supra; Dolgencorp, 746 F.3d at 174-75; Allstate Indemnity Co. v. Stump, 191 F.3d 1071 (9th Cir. 1999).[6]

---

[6] The nexus here is at least as direct and substantial as the one between the bad faith tort claims and the insurance policies in the Supreme Court's decision in LaPlante, supra, and the Ninth Circuit's decision in Allstate Indemnity and likely more so than the one between the abuse of process claim and the agreement to provide satellite TV service in the Eighth Circuit's decision in Dish Network, supra and the conversion claim in Attorney's Process. Granted, except for Attorney's Process, these are all "exhaustion cases" for which there only need be a colorable claim of jurisdiction to require exhaustion. And, in the case of Attorney's Process, the Eighth Circuit remanded the conversion claim for consideration of whether there was a sufficient nexus under the first Montana exception since the district court
(continued...)

Finally, State Farm has not presented any reason why the Tribe would not have the right to regulate the economic activity of providing insurance to tribal members on the reservation. In fact, the authority cited above supports the conclusion it has that right. See also Williams v. Lee, 358 U.S. 217, 223 (1959). Further, as the Eighth Circuit concluded in Attorney's Process, if the Tribe retains the power under Montana to regulate the conduct at issue, it does not make "any difference whether it does so through precisely tailored regulations or through tort claims . . . ." 609 F.3d at 938; accord Dolgencorp, 746 F.3d at 174.

In summary, the court concludes that the tribal court does have jurisdiction over the Greenwoods' claims against State Farm.[7] In reaching this conclusion, the status of the title of the land is not a significant consideration. Rather, the important factors for purposes of *this* case, given the nature of the activity at issue, are that the insurance policy was issued to members of the Tribe

---

[6](...continued)
had not addressed the issue. More recently, however, the Fifth Circuit did reach the issue of tribal court jurisdiction in Dolgencorp, supra, and the nexus that the court found sufficient to sustain tribal court jurisdiction in that case was no more direct and substantial than the one here. In Dolgencorp, an Indian tribe operated a job-training program that placed young tribal members in short-term, unpaid positions in local businesses for educational purposes. Dolgencorp, which operated a Dollar General store on tribal land on the reservation, agreed to participate in the training program and take on an intern. Later, the intern sued Dolgencorp, the Dollar General Corporation, and the store manager in tort claiming that he had been sexually molested by the store manager. Dolgencorp, 746 F.3d at 169. The Fifth Circuit concluded that participation in the youth training program was a sufficient consensual relationship to invoke the first Montana exception and that the nexus between that relationship and the intern's tort claim was enough to sustain tribal court jurisdiction. Id. at 173-74.

[7] The focus of the discussion has been upon the Greenwoods' bad faith claim since that is the one the tribal appellate court specifically addressed and is also the one that has been the principal focus of the briefing here. While the record is somewhat murky with respect to the Greenwoods' original claims (which the Greenwoods' counsel characterized during oral argument as being contract based), the court concludes there is a sufficient nexus for them as well. For all of the claims, however, the conclusion that there is tribal court jurisdiction is no expression of opinion regarding the merits.

and is for a residence located on the reservation. Consequently, the court would reach the same conclusion if the Greenwoods' residence was situated on non-Indian owned fee land.[8]

## III. ORDER

Based on the foregoing:

1. State Farm's motion for summary judgment (Doc. No. 26) is **DENIED** on the grounds that the tribal court has jurisdiction over the Greenwoods' claims and any claim against the remaining defendants is moot.

2. The Greenwoods' motion for summary judgment of dismissal (Doc. No. 24) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2014.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge

---

[8] The Greenwoods' counsel suggested for the first time during oral argument that the court does not have to determine that one of the Montana exceptions applies before concluding the tribal court has jurisdiction to adjudicate the Greenwoods' claims because their residence is not located on non-Indian owned fee land. In support, counsel cited the recent decision by Chief Judge Erickson in Belcourt Public School Dist. v. Davis, __ F. Supp. 2d __, 2014 WL 458075, at **5-6 (D.N.D. Feb. 4, 2014). Given the conclusion that the first Montana exception has been satisfied, the court need not address that argument.